
FILED
OCT 04 2017

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| KATHY L. KOECK,<br><br>Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY;<br><br>Defendant. | 1:16-CV-01040-CBK<br><br>OPINION AND ORDER |

Plaintiff brought this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of defendant's final decision denying plaintiff's claim for disability insurance benefits. I have conducted a *de novo* review of the record. I find that the Commissioner's decision is not supported by substantial evidence on the record as a whole.

An individual is considered to be disabled if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). *Accord*, Bernard v. Colvin, 744 F.3d 482, 486 (8th Cir. 2014). An individual shall be determined to be disabled "only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

"To be eligible for disability insurance benefits, a claimant has the burden of establishing the existence of a disability under the Act." Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). Judicial review of the Commissioner's decision that claimant has failed to establish by a preponderance of the evidence that she is disabled within the meaning of the Social Security Act is limited to determining whether the Commissioner's decision is supported by substantial evidence in the record as a whole. Kamann v. Colvin, 721 F.3d 945, 950 (8th Cir. 2013).

"Substantial evidence is less than a preponderance, but enough that a reasonable mind might find it adequate to support the Commissioner's conclusions." Draper v. Colvin, 779 F.3d 556, (8th Cir. 2015) (internal quotations omitted) (*quoting* Travis v. Astrue, 477 F.3d 1037, 1040 (8th Cir. 2007)). "We consider both evidence that detracts from the ALJ's decision, as well as evidence that supports it, but we will not reverse simply because some evidence supports a conclusion other than that reached by the ALJ." McDade v. Astrue, 720 F.3d 994, 998 (8th Cir. 2013) (internal citations omitted). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJs] decision." Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).

> The ALJ used the familiar five-step sequential evaluation to determine disability:
>
> > In step one, the ALJ decides whether the claimant is currently engaging in substantial gainful activity; if the claimant is working, he is not eligible for disability insurance benefits. In step two, the ALJ determines whether the claimant is suffering from a severe impairment. If the claimant is not suffering a severe impairment, he is not eligible for disability insurance benefits. At the third step, the ALJ evaluates whether the claimant's impairment meets or equals one of the impairments listed in Appendix 1 of the regulations (the "listings"). If the claimant's impairment meets or equals one of the listed impairments, he is entitled to benefits; if not, the ALJ proceeds to step four. At step four, the ALJ determines whether the claimant retains the "residual functional capacity" (RFC) to perform his or her past relevant work. If the claimant remains able to perform that past relevant work, he is not entitled to disability insurance benefits. If he is not capable of performing past relevant work, the ALJ proceeds to step five and considers whether there exist work opportunities in the national economy that the claimant can perform given his or her medical impairments, age, education, past work experience, and RFC. If the Commissioner demonstrates that such work exists, the claimant is not entitled to disability insurance benefits.

McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011) (internal C.F.R. citations omitted).

The ALJ determined at step one that plaintiff had not engaged in substantial gainful activity since August 31, 2011.

At step two, the ALJ determined that plaintiff's Reynaud's syndrome, fibromyalgia, degenerative disc disease, major depressive disorder, and anxiety disorder represent severe impairments that more than minimally interfere with her ability to engage in basic work

activities. The ALJ rejected any contention that plaintiff's hypothyroidism, diabetes, anemia, or fatigue represent severe impairments.

At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment.

"Prior to step four, the ALJ must assess the claimant's residual functioning capacity ("RFC"), which is the most a claimant can do despite her limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009). The ALJ must also determine "the claimant's age, education, and relevant work experience—the latter three findings being referred to as vocational factors, as opposed to RFC, which is a medical factor." Jones v. Astrue, 619 F.3d 963, 971 (8th Cir. 2010).

The ALJ determined that plaintiff has the residual functional capacity to perform a full range of light work. Specifically, the ALJ determined that plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently, can sit a total of 6 hours, as well as stand and walk a combined 6 hours in an 8-hour day, has no limits reaching and can frequently "handle and finger," the latter finding being not well defined. He determined that she had no postural, visual, or communicative limitations but must avoid exposure to extreme cold temperatures, unprotected heights, and fast and dangerous machinery. She was found to be limited to work involving only brief and superficial contact with others while performing simple, routine and repetitive tasks. There is no indication in the record where he got those limitations.

Although the medical records showed she has medically determinable impairments, the ALJ rejected plaintiff's claimed intensity, persistence, and the limiting effects of her symptoms. He opined that the medical evidence of degenerative disc disease does not support that such impairments are as severe as alleged by the plaintiff. He reviewed some of her treatment records and determined that her fibromyalgia and Reynaud's limitations were consistent with the residual functional capacity set forth above. The ALJ reviewed some of plaintiff's mental health records and determined that they did not support her allegations of disabling symptoms.

At step four, the ALJ determined that plaintiff was unable to perform her past relevant work as a cashier, data entry clerk, general clerk, or still photographer. Since the ALJ determined that plaintiff could not return to her past relevant work, the burden shifted to the Commissioner to show that plaintiff retains the residual functional capacity to perform other work that exists in significant numbers in the national economy. Moore v. Astrue, 572 F.3d at 523. The ALJ determined at step five that plaintiff has the residual functional capacity to

perform light work with some restrictions and such work exists in significant numbers in the national economy. He thus denied plaintiff's application for disability benefits.

There is no question that the plaintiff was treated for fibromyalgia by Dr. Catherine Gerrish since 2010, and such treatment included prescription pain medication. The ALJ reviewed an August 2014, report from Dr. Patrick Retterath who saw plaintiff for chronic pain. Dr. Retterath noted that, although plaintiff did not have range of motion problems, she did present with symptoms consistent with fibromyalgia. Notwithstanding any description of her functional limitations in the medical records, the ALJ determined for himself what her limitations were.

There is no question that plaintiff was diagnosed with Raynaud's syndrome and was treated for that condition. Plaintiff was referred by South Dakota Disability Determination Services to Dr. Donald Salmon who conducted a physical exam on May 18, 2014. Dr. Salmon noted that plaintiff complained of symptoms arising out of fibromyalgia and Reynaud's but, without performing any testing, he stated he did not notice any problems. He opined that plaintiff did not, on that date, have any difficulty with range of motion or any Reynaud's symptoms. Dr. Salmon did not set forth any opinion on plaintiff's residual functional capacity. The ALJ determined, based upon Dr. Salmon's notes, that plaintiff did not in fact have any limitations arising out of Reynaud's other than having to avoid extreme cold.

The ALJ stated that "the record does not include an opinion from any medical provider, treating or non-treating, that sets forth more limited restrictions or any limitations whatsoever." The ALJ thus crafted his own determination of plaintiff's limitations. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." Combs v. Berryhill, 868 F.3d 704, 708, (8th Cir. August 21, 2017). "If the medical records received from a treating physician are inadequate to determine a claimant's disability, the regulations provide that the Commissioner will contact the treating physician to clarify." Id. "The ALJ 'may not simply draw his own inferences about plaintiff's functional ability from medical reports.'" Id.

> "Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010) (*quoting* Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004)). "The opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial

4

> evidence on the record as a whole." *Id.* (*quoting* Shontos v. Barnhart, 328
> F.3d 418, 427 (8th Cir. 2003)). "Likewise, the testimony of a vocational
> expert who responds to a hypothetical based on such evidence is not
> substantial evidence upon which to base a denial of benefits." Nevland v.
> Apfel, 204 F.3d 853, 858 (8th Cir. 2000).
>
> \*\*\*
>
> While we recognize that an ALJ does not "have to seek additional
> clarifying statements from a treating physician unless a crucial issue is
> undeveloped," Vossen, 612 F.3d at 1016 (emphasis omitted) (quoting
> Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004)), here, there is no
> opinion from a treating physician on the "crucial issue" of whether
> [plaintiff] was limited to sedentary work or could perform light work.

Combs v. Berryhill, 868 F.3d at 708.

Fibromyalgia is an elusive diagnosis; "[i]ts cause or causes are unknown, there's no cure, and, of greatest importance to disability law, its symptoms are entirely subjective." Tilley v. Astrue, 580 F.3d 675, 681 (8th Cir. 2009) (quoting Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir.1996)). The Eighth Circuit has held, "in the context of a fibromyalgia case, that the ability to engage in activities such as cooking, cleaning, and hobbies, does not constitute substantial evidence of the ability to engage in substantial gainful activity." Tilley v. Astrue, 580 F.3d at 681 (*quoting* Forehand v. Barnhart, 364 F.3d 984, 988 (8th Cir.2004)). Plaintiff's "limited ability to complete light housework and short errands does not mean she has 'the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.'" Tilley v. Astrue, 580 F.3d at 681 (*quoting* McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982)).

Plaintiff's treating physicians' notes indicate in some places that plaintiff has a full range of motion" or was "in no acute distress." The Eighth Circuit set forth in Combs specific instruction in cases such as this:

> The Commissioner concedes in her brief that the notation "'no acute
> distress' [is not] of particular significance with a chronic condition such as
> [plaintiff's] rheumatoid arthritis." The Commissioner instead argues that
> the finding of "normal movement of all extremities" is inconsistent with
> [plaintiff's] complaints of pain. But the relevance of this finding in terms
> of [plaintiff's] ability to function in the workplace is not clear: Although
> [plaintiff's] medical providers consistently note in their treatment records
> that [plaintiff] has a normal range of motion, they likewise consistently
> diagnose her with rheumatoid arthritis, prescribe medications for "severe

5

> pain," and note "trigger point" and "joint pain with" range of motion. By relying on his own interpretation of what "no acute distress" and "normal movement of all extremities" meant in terms of [plaintiff's] RFC—instead of seeking clarification from [plaintiff's] medical providers—the ALJ failed to satisfy his duty to fully and fairly develop the record.

Combs v. Berryhill, 868 F.3d at 709. Combs is directly on point in this case.

Given the nature of fibromyalgia, reliance on the assessment of a consulting physician who conducts a single limited examination of the disability applicant does not constitute substantial evidence on the crucial issue of the applicant's ability to function in the workplace. The ALJ should have, at a minimum, obtained all the records from her treating rheumatologist and the specialists to whom he referred plaintiff for pain. The ALJ should have sought clarification from plaintiff's treating rheumatologist or other treating physicians as to work limitations caused by fibromyalgia, consistent with his responsibility to develop the record fairly and fully.

The ALJ failed to specifically find that the plaintiff can work full time as required in Bladow v. Apfel, 205 F.3d 356 (8th Cir. 2000). In Bladow, the Eighth Circuit discussed Kelly v. Apfel, 185 F.3d 1211 (11th Cir. 1999), which noted that it is the Commissioner's position that "only an ability [on the part of the claimant] to do full-time work will permit the ALJ to render a decision of not disabled." *Id.* at 1214. Apparently, the Commissioner's policy interpretation was based upon Social Security Ruling (SSR) 96-8p, which provides that residual functional capacity "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Bladow, 205 F.3d at 359.

There was no finding in this case that the plaintiff could work an eight hour day five days a week as described in and required by Bladow. In fact, the records show that, when plaintiff was previously employed, plaintiff's conditions required her to be absent from work up to one day a week.

I find there is not substantial evidence in the record as a whole to support the Commissioner's decision that the plaintiff is capable of performing light work full time.

6

**ORDER**

Based upon the foregoing,

IT IS ORDERED:

1. Plaintiff's motion, Doc. 11, for summary judgment is granted, in part.

2. The decision of the Commissioner is reversed and remanded pursuant to 42 U.S.C. § 405(g) for further proceedings.

DATED this 4th day of October, 2017.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge